REDMANN, Judge,
dissenting.
It is more probable than not that the accident did not happen as plaintiff testified: but even if it did, the position of the end-gate was not a cause-in-fact of the accident because the accident would have happened just the same if the end-gate were tied in an upright position. And the *339 risk of injury like plaintiff’s is not one within Belt’s duty to verify the uprightness of the car’s end-gate.
The process for removing the 40-foot I-beam (from atop 60-foot beams in the 70-foot car) involved two steps. First, plaintiff would attach the crane cables’ two clamps to the beam, placing them so as to locate the beam’s center (and thus its center of gravity) between them, and the crane operator would then test-lift the beam just a foot or so to verify that the clamps were properly placed as to have the beam balanced for removal from the car. Second, the balanced beam would then be lifted by the crane the full distance out of the rail car to its destination.
The crane operator’s testimony is to the effect that this accident occurred during the first of these two steps. Because the 40-foot beam was centered in the 70-foot rail car the beam’s ends were each about 15 feet from the car’s ends. Plaintiff himself testified that the end-gate (less than four feet tall and hinged at the bottom) leaned into the car “maybe a foot and a half or two feet.”
Plaintiff testified that, as the 40-foot beam was being lifted he heard the sound of metal sliding on metal and that the beam being lifted slid or moved (“maybe two, two and a half feet”) under the leaning gate: “After it had slipped back and hit the gate and the wire [that was intended to secure the gate upright], it hit it, it broke and the gate fell on it and it [the beam] spinned out to the right. * * * Q. What prevented you from being able to handle this beam? A. Because it had slipped back and it never did get clear enough for me to get hold of it .... Q. Clear of what? A. Clear of this other beam, into the gate. When it slipped back, it slipped underneath the gate, it hit back under this gate.” [Emphasis added.]
Accepting that some sliding of metal on metal occurred, we can only explain it in three ways.
One possibility is that plaintiff did not properly center the clamps on the beam he was trying to move, with the consequence that, as the cables began to lift, the unbalanced beam’s heavier, longer portion would have begun to drag along the other beams on which it rested, dragging, however, toward the center of the car to which the cables were pulling it, rather than toward the end of the car. That possibility is not very likely because the crane operator testified that “the very instant that I started to pull on my lever [to first lift the beam] that is when he made the sound and went down.” Thus the beam was not lifted high enough for any imbalance to cause the long end to be dragged towards the middle.
The second possibility is that, as plaintiff’s own testimony virtually concedes, the beam he sought to lift was interlocked with another or others, and it was the upward scraping of the beam being lifted against the beam detaining it that plaintiff heard. One explanation of plaintiff’s injury is that the beam being lifted caused a shifting or “rolling over” of another beam onto plaintiff’s feet.
A final possibility, of course, is that the crane operator somehow moved the beam towards his right (though this unloading procedure called for moving it, after it was lifted straight up above the top of the rail car, to his left) instead of lifting it.
If so, there is no evidence that the end-, gate’s being upright would have altered the course of events, and therefore the gate’s leaning inward would not have been a cause-in-fact of plaintiff’s injury.
But it is not a possibility that the lifting of the beam caused the lifted beam itself to move lengthwise towards the end of the car even one foot, much less 15 feet. If the beam is balanced, it will lift up with both ends staying in the same relative position. If the beam is not balanced, the two ends will move, one upward and one downward, but both towards the point near the center where the cable is exerting its force, until, if lifted high enough, the beam would be nearly vertical, with its longer and heavier “half” aiming groundward and the shorter portion aiming skyward.
In any case, any duty to tie the car’s gates upright is not designed to protect *340 against the risk that persons whose job and function and expertise it is to unload the steel beams from the car will botch their job by moving the beams under a tilted gate and injure themselves. See Bonura v. Commercial Union Ins. Co., La. 1981, 393 So.2d 1239.